**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**ALIESHA ALAMO,** on behalf of herself and all other plaintiffs similarly situated, known and unknown,

      Plaintiff,

v.

**PEACHES BOUTIQUE LLC,** an Illinois limited liability company**, ROY SURDEJ,** individually, and **BARBARA SURDEJ,** individually,

      Defendants.

Case No. 18-cv-04394

Hon. Andrea R. Wood

Jury Demand

**JOINT MOTION FOR APPROVAL
OF FAIR LABOR STANDARDS ACT SETTLEMENT AGREEMENT**

NOW COME the Parties, by their respective counsel, and in support of their Joint Motion For Approval of Fair Labor Standards Act Settlement Agreement, state as follows:

1.    All Parties in the captioned action respectfully move this Court to approve the proposed settlement reached by the Parties and memorialized in the Mutual General Release and Settlement Agreement (the "Settlement Agreement" or "Settlement") attached as **Exhibit "A."** This matter (the "Lawsuit") asserts wage and hour claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and various state and municipal laws, on behalf of former employees of Defendant Peaches Boutique LLC ("Peaches").

2.    On December 21, 2018, after the Parties reached an agreement, this Court authorized the sending of Notice and Consent to approximately 127 past and present employees of Defendants who were allegedly denied overtime and minimum wage under the federal, state and municipal wage and hour laws asserted, within three (3) years of the filing of the Lawsuit. As a result of that mailing, twenty-three (23) individuals returned valid Consent forms requesting to be Parties-Plaintiffs in the Lawsuit and those Consents were filed with the Court. The terms of the Settlement reached herein with the 24 Plaintiffs provides no legal effect, limitation, or waiver with respect to the merits of any

1

other potentially similarly situated person who may have similar claims against Defendants but who did not opt-in to the Lawsuit, nor does the Settlement provide any legal effect, limitation, or waiver to any defenses Defendants may have with respect to any such claims.

3.      The Parties respectfully submit that the proposed Settlement is fair and reasonable. The Settlement was achieved during lengthy negotiations among the Parties, conducted by experienced counsel.

4.      The Settlement achieves both sides' primary objectives. For Plaintiffs, the Settlement ensures that the Plaintiffs will be paid promptly for wages they allege are due them. For Defendants, the Settlement ensures finality while making the Settlement as inclusive as possible and offers Defendants the ability to resolve these claims without admission of liability or wrongdoing.

5.      All 24 Plaintiffs in the Lawsuit executed or will execute identical Agreements with identical language other than their individual settlement amounts.  An exemplar of the Settlement Agreement is attached hereto as **Exhibit "A"** and is submitted for approval and entry by the Court. Attached as **Exhibit "B"** is a list of the individual settlement amounts for each settling Plaintiff.  The difference in the amounts as between settling Plaintiffs is largely due to these three (3) factors:  a) length of employment within the statutory period allowed under the FLSA (three (3) years); b) the individual wage rate paid during the relevant time period, and; c) the hours worked in various pay periods as shown by Defendants' time keeping records.

6.      The following sections explain the nature of the Lawsuit, the extensive negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds, as well as the requested attorneys' fees.

## THE LAWSUIT

7.      Plaintiffs are all past and current employees who worked for Peaches between the dates of June 25, 2015 and June 30, 2018, and who also worked in excess of forty (40) hours during

2

any week during this time period. On June 25, 2018, Plaintiff filed her initial lawsuit against

Defendants seeking compensation for unpaid overtime and minimum wages. On August 13, 2018,

Plaintiff filed her Amended and operative Complaint alleging: (1) Violation of Fair Labor Standards

Act; (2) Willful Violation of the Fair Labor Standards Act; (3) Liquidated Damages Under the Fair

Labor Standards Act; (4) Supplemental State Law Claim – Violation of the Illinois Minimum Wage

Law, and; (5) violation of the Chicago Minimum Wage Ordinance.

8.      Defendant Peaches answered the Complaint on September 6, 2018, and individual

Defendants Roy and Barbara Surdej answered on October 10, 2018.

9.      All Defendants deny any liability or wrongdoing of any nature. The Parties

acknowledge that should this case proceed, many bona fide disputes over legal and factual issues

will have to be litigated, the ultimate resolution of which will substantially impact the outcome of

these matters.  Such bona fide disputes include:

A.      Whether the Defendants can be held liable under the FLSA in the
circumstances existing here;
B.      Whether the actions of Defendants at relevant times were taken in good
faith, and;
C.      Other contested factual matters relating to the amount of time worked by
Plaintiffs, including individualized issues relating to alleged work-off-the-clock.

## THE NEGOTIATIONS

10.     Settlement negotiations in the Lawsuit spanned over ten (10) months. The

negotiations began in October of 2018 and continued through July of 2019.

11.     On October 5, 2018, the Parties convened and discussed the possibility of settlement,

and thereafter agreed to temporarily stay formal discovery and continued litigation in the hopes of

engaging in further and more complex settlement discussions.

12.     On December 17, 2018, following several rounds of negotiations, the Parties agreed

to move the Court to begin sending notice to the approximately 127 individual identified as past

and present employees of Peaches following within the three year time period alleged in Plaintiff's

3

Amended Complaint.

13.     Consent forms were mailed out to these individuals on or around December 20, 2018, with a deadline for opting-in set for February 21, 2019.

14.     As of the deadline, twenty-one (21) Plaintiffs (including Plaintiff Alamo) had decided to opt-in and join the Lawsuit.

15.     In the months that followed, three additional Plaintiffs asked to be allowed to opt-in to the Lawsuit, and the Parties were able to negotiate their inclusion into the Lawsuit, for a total of twenty-four (24) Plaintiffs.

16.     Thereafter, Defendants voluntarily provided payroll records for all 24 Plaintiffs, and the Parties engaged in several rounds of negotiations over the proposed compensation to each Plaintiff.

17.     Meanwhile, the Parties continued to litigate the underlying Lawsuit, with Plaintiff filing a Motion for Leave to File a Second Amended Complaint on April 25, 2019, and a Second Motion for Leave on May 5, 2019, both of which were vigorously contested by Defendants.

18.     Faced with the prospect and uncertainty of continued litigation, the Parties reached an agreement in principle on July 12, 2019. The proposed Settlement eliminates the time, cost, and uncertainty that would be occasioned by further litigation of the issues.

## THE SETTLEMENT TERMS

19.     If approved by the Court, the Settlement will reimburse Plaintiffs for the alleged unpaid wages and also cover all Plaintiffs' attorneys' fees that are deemed fair and reasonable and approved by the Court. In exchange, the Lawsuit will be dismissed first without prejudice, and then after terms of the Agreement are satisfied, with prejudice.

## THE PROPRIETY OF APPROVAL

20.     The proposed Settlement is subject to approval by the Court. As explained below, Court approval is warranted on all scores.

### A.     Satisfying the Settlement Standards

In the Seventh Circuit, parties typically request a court of competent jurisdiction to approve the settlement, in order to ensure a valid and enforceable release of an FLSA claim. *See*, *e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor,* 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001).  When reviewing a proposed FLSA settlement, the district court should scrutinize the settlement and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id*. at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id*. at 1354.

Here, although Defendants quickly conceded liability for unpaid overtime, there were many bona fide contested factual and legal issues related to other claims for compensation asserted by Plaintiffs, including disputes about whether Peaches had complied with minimum wage requirements and whether it had required employees to "work off the clock"—both assertions firmly denied by Defendants.  The Parties have determined, however, that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests.  In light of these realities, the Parties believe that the Settlement is the best way to resolve the disputes between and among them, and, given the contested nature of the underlying litigation, the Court should likewise conclude that the Settlement is fair. See *Lynn's Food Stores, Inc*., 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness);

5

*Roberts v. Apple Sauce, Inc.*, No. 12-cv-830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ("The

reviewing Court normally approves a settlement where it is based on 'contentious arm's-length

negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law

and fact exist such that the value of an immediate recovery outweighs the mere possibility of further

relief after protracted and expensive litigation.'") (internal citations omitted).

Furthermore, in reviewing the record and evaluating the strength of the case to determine

whether a proposed FLSA settlement is "a fair and reasonable resolution of a bona fide dispute over

[the application of the] FLSA['s] provisions," *Lynn's Food Stores, Inc.*, 679 F.3d at 1355, courts

consider the following non-exclusive factors: "(1) the complexity, expense, and likely duration of

the litigation; (2) the reaction of the Plaintiffs to the settlement; (3) the stage of the proceeding and

the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the action through the trial; (7) the ability of the defendants

to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the

best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the

risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL

4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011). In this instance, the Settlement meets all applicable

factors considered by courts, rendering it fair and reasonable.

As an initial matter, the Settlement appropriately factored in the complexity, risk, expense,

likely duration of the litigation, and the range of reasonableness of the settlement fund in light of

the best possible recovery. Namely, the Parties reached a settlement on a collective basis after

exchanging adequate discovery to perform the necessary calculations to determine the potential

range of recovery in this case.

Moreover, the Settlement is not the product of fraud or collusion. Instead, the Settlement

was reached in an adversarial proceeding through arm's length negotiations between capable

6

attorneys who have extensive experience with wage and hour claims. Counsel for the Parties are experienced in complex class and collective action litigation and have represented clients in numerous wage and hour class and collective actions. Additionally, counsel for the Parties were thoroughly familiar with the facts and legal issues when settlement was reached. In the end, experienced counsel on both sides of the matter deemed the settlement fair and reasonable.

Finally, the gross amount of the Settlement representing Plaintiffs' back wages, $69,612.48, is reasonable in relation to the potential recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages is uncertain. Even if a trier of fact ultimately found liability, a range of possible damages exist depending on factors including, but not limited to, the Parties' and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendants' knowledge, willfulness, and good faith. As set forth above, Defendants produced adequate discovery to perform the necessary calculations to determine the potential range of recovery in this case. Thereafter, Plaintiffs submitted their initial demand for settlement and the Parties proceeded to vigorously negotiate both the underlying facts as well as the calculation of the statutory damages. Likewise, the proposed distribution of the gross settlement amount - as detailed in the Settlement Allocation Chart attached hereto - is reasonable. Indeed, the settlement funds were allocated proportionately between the settling Plaintiffs based on time employed and hours allegedly worked within the applicable statute of limitations, as summarized herein.

**B.     The Settlement Distributions Are Fair, Reasonable and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). In the present case, the Settlement Agreement is fair

and just as it provides reimbursement to Plaintiffs and covers all attorneys' fees, as well. As mentioned above, the individual settlement amounts were derived from a thorough evaluation of the time and payroll records of each Plaintiff, and the settlement amounts agreed upon reflect the relative differences between the settling Plaintiffs' individual employment factors as highlighted above.

### C. Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Here, Plaintiffs assert that their counsel, John W. Billhorn and members of Billhorn Law Firm, incurred substantial hours of work associated with investigation, discovery, numerous consultations with class members, data review and spreadsheet construction, motions, and court appearances. Defendants do not contest that Mr. Billhorn and his firm have spent significant resources on the case, and they have no way to verify an appropriate fee, but have agreed to pay attorneys' fees and costs in an amount determined by the Court to be fair and reasonable, up to $80,000.00. Attorney Billhorn asserts that by agreeing to a maximum recovery of fees and costs of $80,000.00, he has made a meaningful concession regarding the fees actually incurred.

## CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering an Order Approving Settlement and dismissing the matter without prejudice, to be converted to with prejudice within 14 days after payment is tendered.

Respectfully submitted,

 /s/ John W. Billhorn
John Billhorn (# 6196946)
BILLHORN LAW FIRM
53 W. Jackson Blvd., Suite 410
Chicago, IL 60604
(312) 853-1450 [Telephone]
(312) 853-1459 [Facsimile]
jbillhorn@billhornlaw.com

/s/ David J. Dale
David J. Dale (# 6308835)
Staub Anderson LLC
55 W. Monroe, Ste. 1925
Chicago, IL 60603
(312) 345-0545 [Tel.]
(312) 345-0544 [Fax.]
ddale@staubanderson.com